UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

INFORMATION AND DISPLAY SYSTEMS,
L.L.C., a Florida limited liability
company,

                    Plaintiff,

vs.                                    Case No.  3:05-cv-1135-J-33TEM

AUTO-REF, INC., a Canadian
corporation,

                    Defendant.
_____/

## ORDER

   This cause comes before the Court pursuant to Plaintiff
Information and Display Systems, L.L.C.'s Motion to Compel
Arbitration (Doc. # 20), filed on April 11, 2006.
Defendant/Counter-Plaintiff Auto-Ref, Inc.'s Response in Opposition
(Doc. # 24) was filed on May 5, 2006.

## I.   BACKGROUND

   The dispute between Information and Display Systems and Auto-
Ref arose after an unsuccessful attempt to create a joint venture
between the two companies.  IDS is a limited liability company that
creates software, integrated systems, and other applications for
various competitive professional sports.  (Id. at 1.)  Auto-Ref is
a Canadian corporation that either had developed or was in the
process of developing software that could be used to "call lines"
for competitive tennis matches.  (Id.; Doc. # 24, p. 2.)

   In December of 2004, IDS approached Auto-Ref about a potential

business arrangement between the two companies. (Doc. 24, p. 2.) In order to memorialize the parties' discussions in regards to their potential joint venture, the parties exchanged a series of letters. (Id.; Doc. # 20, p. 1.) IDS sent a final letter in that series, a Letter of Intent, to Auto-Ref in an e-mail attachment on January 23, 2005. (Doc. # 20, p. 1; Doc. # 24, p. 3.) The letter included the terms of an earlier letter and added additional terms. (Doc. # 24, p. 3.) Later that same day, IDS sent Auto-Ref a second email with a PDF version of the Letter of Intent, which IDS claimed was substantively identical to the earlier letter. (Id.) According to Auto-Ref, the second version of the letter included the addition of an Arbitration Provision. (Id.) The provision stated that:

> If both parties cannot come to a final agreement Auto-Ref agrees to pay IDS for all the equipment IDS has purchased, repay all its loans and agree to enter into binding arbitration (in the U.S.) with IDS in determining a fee to be paid to IDS for its intellectual contributions, time, effort, rights, etc. that have been applied to building the production system.

(Id. at 4.) Auto-Ref states that it detected the "surreptitious addition" of the provision but, under duress, signed the letter on January 24, 2004 anyway. (Id. at 3-4.)

According to Auto-Ref, its intent and understanding was that it had agreed to arbitrate only the issue of the amount of fees to be paid to IDS. (Id. at 4.) It was not the company's intent to arbitrate IDS's entitlement to those fees, nor was it its intent to

2

arbitrate any other claims or controversies with IDS.  (Id.)

After a certain period of time, it became clear that the parties would not be able to agree upon a more formal contract. (Doc. # 20, p. 3.)  At that point, IDS requested that Auto-Ref repay the $80,000 loan, repurchase the equipment that IDS purchased, and provide reasonable compensation for IDS's development efforts.  (Id.)  Auto-Ref refused payment of any of these amounts and, on August 2, 2005, IDS delivered a written demand for arbitration pursuant to the Letter of Intent's Arbitration Provision.  (Id.)  Auto-Ref refused to comply with the demand for arbitration.  (Id.)

## II.  LEGAL STANDARD

Under the Federal Arbitration Act, a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute.  9 U.S.C. § 3 (2005).  It is essential to the Court's inquiry to determine whether the parties agreed to arbitrate the dispute at hand, because absent such an agreement a court cannot require parties to arbitrate disputes that they have not previously agreed to arbitrate.  See Telecom Italia v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001)(citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

According to Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983), the court makes this determination by applying "federal substantive law of

3

arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id.  It is well-settled that the district court should examine this issue keeping in mind

> a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Id. at 24-25.

**III. ANALYSIS**

   **A.   Arbitrability**

   As a threshold issue, the Court must determine whether it is the proper body to decide issues of arbitrability.  Unless there is "clear and unmistakable evidence" that the parties intended the issue of arbitrability to be decided by arbitrators, such matters are properly before the Court.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  In the absence of any indication of contrary intent, the Court concludes that the parties intended for the issue to be decided by the district court.

   **B.   Scope of the Arbitration Provision**

   Next, the Court must decide if the Arbitration Provision at hand is broad enough to encompass the issues raised in IDS's Motion to Compel.[1]  The Arbitration Provision states that

---

   [1]   Auto-Ref does not dispute the existence of a valid written agreement to arbitrate in this case.

4

> If both parties cannot come to a final agreement Auto-Ref
> agrees to pay IDS for all the equipment IDS has
> purchased, repay all its loans and agree to enter into
> binding arbitration (in the U.S.) with IDS in determining
> a fee to be paid to IDS for its intellectual
> contributions, time, effort, rights, etc. that have been
> applied to building the production system.

(Doc. # 24, p. 4.)  Pursuant to this language, IDS believes that

the Court should compel arbitration of the following matters:

> (i) the amount that Auto-Ref must repay to IDS for the
> $80,000 loan; (ii) the amount that Auto-Ref must pay IDS
> for the equipment that was purchased by IDS in
> furtherance of the development of the tennis linc [sic]
> calling system; and (iii) the amount that Auto-Ref should
> pay IDS for its contribution to the development of the
> line calling system.

(Doc. # 20, p. 3.)

Auto-Ref asserts that the Provision limits itself to the

determination of what amount of money Auto-Ref must pay IDS; it

does not extend to a determination that IDS actually provided the

services that would entitle it to such payments.  (Doc. # 24, p.

11.)  If this interpretation is correct, then IDS's motion is

premature because the Court has yet to determine that IDS is

entitled to a fee.

The Court disagrees with both parties' assessment of the

Provision's scope.  First, it disagrees with IDS's contention that

arbitration should be compelled as to payment for the equipment and

repayment of the loans.  The plain language of the Provision

indicates that the parties agreed to "enter into binding

arbitration (in the U.S.) with IDS in determining a fee to be paid

5

to IDS for its intellectual contributions, time, effort, rights, etc. that have been applied to building the production system." The wording of the Provision does not indicate that Auto-Ref's obligation to pay IDS for all the equipment IDS has purchased or to repay all its loans are arbitrable issues.   Rather, upon examination of the construction of the Provision, it appears that Auto-Ref has only agreed to the following: (1) to pay IDS for all the equipment IDS has purchased; (2) to repay all its loans; and (3) to enter into enter into binding arbitration (in the U.S.) with IDS in determining a fee to be paid to IDS for its intellectual contributions, time, effort, rights, etc. that have been applied to building the production system.

Second, the Court disagrees with Auto-Ref's contention that the language "in determining a fee to be paid" actually means "in determining the amount of a fee to be paid."   Auto-Ref would have this Court separate the fee issue into two phases.   In the first phase, the district court must decide whether IDS is actually entitled to a fee.   In the second phase, only if the district court has decided that IDS is entitled to a fee, the arbitrator would decide to what amount of a fee IDS is entitled.

The Court declines to take such an approach.   As the Eleventh Circuit has noted, "[t]he FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement."

6

<u>Paladino v. Avnet Computer Techs.</u>, 134 F.3d 1054, 1057 (11th Cir. 1998)(citing <u>First Options</u>, 514 U.S. at 945 (stating that issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them)).  In the Affidavit of Peter Szirmiak (Doc. # 24-2, p. 2), Auto-Ref has asserted that it was Auto-Ref's understanding and intent that the scope of the Provision included only determination of the amount of IDS's fee; however, there is no evidence of that intent expressed in the Provision.  Furthermore, it is clear that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985)(quoting <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 25).

Here, the parties agreed to enter into binding arbitration in determining a fee to be paid to IDS.  If the parties intent was to limit the determination to <u>the amount</u> of the fee to be paid to IDS, they were free to say so.  They chose not to and, since their agreement says nothing to express that intent, the Court does not believe its decision "twist[s] the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." <u>Id.</u> (citing <u>Goldberg v. Bear, Stearns & Co.</u>, 912 F.2d 1418, 1419-20 (11th Cir. 1990)).

### C.   Waiver

According to Auto-Ref, whatever right IDS may have had to

arbitrate was waived in this case. "An agreement to arbitrate, 'just like any other contract . . ., may be waived.'" <u>Ivax Corp. v. B. Braun of Am., Inc.</u>, 286 F.3d 1309, 1315 (11th Cir. 2002)(citing <u>Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.</u>, 436 F.2d 405, 407 (5th Cir. 1971)). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." <u>Morewitz v. West End of England Ship Owners Mut. Prot. & Indem. Ass'n</u>, 62 F.3d 1356, 1366 (11th Cir. 1995)(citing <u>Price v. Drexel Burnham Lambert, Inc.</u>, 791 F.2d 1156, 1158 (5th Cir. 1986)).

There is a two part test that courts utilize to determine if a party has waived its right to arbitrate. First, the court must determine whether "'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right.'" <u>Id.</u> at 1316 (citing <u>S&H Contractors, Inc. v. A.J. Taft Coal Co.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990)). Second, the court must determine whether, in acting inconsistently with the arbitration right, that party "has in some way prejudiced the other party." <u>Id.</u>

When analyzing waiver, a court should be "mindful of the Supreme Court's admonition that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' . . . Nevertheless, the doctrine of waiver is not an empty shell." <u>Morewitz</u>, 62 F.3d at 1365-66. The burden of proving waiver rests with the party seeking to prove waiver. <u>Marubeni</u>

8

<u>Corp. v. Mobile Bay Wood Chip Ctr.</u>, 2003 U.S. Dist. LEXIS 13675, at *46 (S.D. Ala. June 16, 2003).

### 1.   Acts Inconsistent With the Right to Arbitrate

As the party asserting waiver, it is Auto-Ref's burden to show that IDS has waived its right to arbitrate. <u>Marubeni Corp.</u>, 2003 U.S. Dist. LEXIS 13675, at *46.  The company argues that IDS has acted inconsistently with its right to arbitrate in this case by (1) bringing suit against Auto-Ref; (2) failing to, prior to bringing the suit, move to compel arbitration according to the procedures established in the Federal Arbitration Act; (3) seeking claims in the alternative pursuant to breach of contract and quantum meruit; and (4) failing to immediately move to stay the proceedings and seek an order compelling arbitration from the state court, or this Court upon removal.  (Doc. # 24, p. 13.)

IDS contends that it has not acted inconsistently with its right to arbitrate.  In support of this claim, IDS notes that (1) on August 2, 2005, IDS delivered a written demand for arbitration, with which Auto-Ref refused to comply; (2) IDS commenced this case by filing a Complaint demanding arbitration; and (3) pursuant to Local Rule 3.05(c)(2)(B) IDS attended a case management conference with Auto-Ref, at which time IDS stated that it intended to file a motion to enforce the Arbitration Provision.  (Doc. # 20, p. 7.) Additionally, the first cause of action in the Complaint, entitled "Demand for Arbitration," stated that Counts II and III to this Complaint have been alleged as an alternative to arbitration in the

9

event that this Court does not compel arbitration, and were not asserted to actively litigate the claims or to waive arbitration. (Doc. # 2, p. 5.)   IDS adds that after the case management conference, it answered Auto-Ref's counterclaim and filed the instant Motion to Compel Arbitration and in these actions "IDS has neither actively participated in this lawsuit nor taken any action which is inconsistent with its right to arbitrate." (Doc. # 20, p. 7.)   Auto-Ref has conceded that "IDS has not actively issued discovery requests to Auto-Ref . . . ." (Doc. # 24, p. 14.)

The Court concludes that Auto-Ref has not carried its burden of proof of showing that "'under the totality of the circumstances,' [IDS] 'has acted inconsistently with the arbitration right.'"   Ivax Corp., 286 F.3d at 1315 (citing S&H Contractors, Inc., 906 F.2d at 1514).   IDS has demonstrated that it demanded arbitration before the suit, demanded arbitration in its Complaint, and did not actively litigate this case to an extent that would be inconsistent with its right to arbitrate.   Several months elapsed between the filing of the Complaint and the filing of the Motion to Compel Arbitration; however, considering the totality of the circumstances, that delay is not sufficient to convince the Court that IDS has acted inconsistently with its arbitration right.   The Court notes that, as the party bearing the burden of proof, Auto-Ref was charged with persuading the Court that IDS has acted inconsistently with its arbitration right and, based on the information currently before it, the Court cannot reach such a conclusion.

**2.    Prejudice to Auto-Ref**

Because it finds that IDS has not acted in a manner inconsistent with his right to arbitrate, an analysis of any possible prejudice to Auto-Ref is unnecessary.

**IV.  CONCLUSION**

For the reasons stated herein, the Court declines to compel arbitration on the issue of IDS's entitlement to payment for the equipment it purchased, or for the repayment of its loans to Auto-Ref.  However, because it finds that the parties agreed to enter into binding arbitration in determining a fee to be paid to IDS, the parties are hereby compelled to submit to arbitration in the manner provided for in their agreement.  This determination will include both IDS's entitlement to a fee and, if appropriate, the amount of such fee.  Finally, the Court finds that IDS has not waived its right to arbitrate because Auto-Ref has not shown that IDS acted inconsistently with his right to arbitrate.

Accordingly, it is now

**ORDERED, ADJUDGED** and **DECREED:**

1.    Plaintiff Information and Display Systems, L.L.C.'s Motion to Compel Arbitration (Doc. # 20) is **GRANTED IN PART, DENIED IN PART**.

2.    According to their agreement, the parties must submit to arbitration the issue of a fee to be paid to IDS for its intellectual contributions, time, effort, rights, etc.

that were applied to building the production system.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this 3rd day of October, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record